L8gWburC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                              20 Cr. 182 (VEC)

JONATHAN BURGOS,
   a/k/a "John John,"

         Defendant.

------------------------------x                      Conference

                             New York, N.Y.
                             August 16, 2021
                             2:30 p.m.


Before:


               HON. VALERIE E. CAPRONI ,

                           District Judge

                APPEARANCES

AUDREY STRAUSS
    United States Attorney for the
    Southern District of New York
BY:  MICAH F. FERGENSON
    SAMUEL P. ROTHSCHILD
    MICHAEL K. KROUSE
    Assistant United States Attorneys

RUHNKE & BARRETT
    Attorneys for Defendant
BY:  DAVID A. RUHNKE
    -and-
DIANE FERRONE

L8gWburC

1          (Case called; appearances noted)

2          THE COURT:  Good afternoon.

3          OK.  We're here for the final pretrial conference in

4    this case.  Let me tell you what we're going to talk about.  We

5    will talk about my general trial procedures.  We'll talk about

6    your *in limine* motions and I'll answer any questions that the

7    parties have.

8          We're starting trial on August 23 at 10:00.  I'm going

9    to ask you to all be in our designated courtroom, which is 26B,

10   as in boy, by 9:45 that morning.  As soon as we get a jury

11   ready, we'll go down.

12         Let me come back to how jury selection works now.

13         Are we still estimating that your trial is going to be

14   three days?

15         MR. ROTHSCHILD:  That's correct, your Honor.

16         THE COURT:  We'll sit from 9:30 until five.  Have

17   enough witnesses to fill up the day.  I usually do not sit on

18   Friday.  If we're still talking about Friday, that means your

19   case is going in much slower than you anticipate so we probably

20   will sit Friday because that means I'm going to be getting

21   antsy to get finished with this case, unless something really

22   has gone wrong and you've got a whole trial day, and then I'll

23   kick that over to Monday.  But I'll keep you posted.

24         If the lawyers know that there's some issue that's

25   going to come up during court that day, please be in the

L8gWburC

1    courtroom early.  Tell Angela you've got an issue that needs to
2    be discussed.  I'll come out early.  My goal is to have jurors
3    in the box at 9:30.  So please, if there's stuff that we can
4    resolve before 9:30, let Angela know.  I'll come out and we'll
5    resolve it.
6         This is not really much of an issue now in the new
7    courtrooms because hopefully everything that you've got you've
8    got electronically so you can show the witness an exhibit
9    electronically rather than handing him a hard copy.  But if for
10   some reason you have to hand a witness something, you do not
11   need my permission to advance, to approach the witness, but
12   please get back behind the podium.  You really are going to
13   have to do that, because --
14        Has anybody tried a case in the outfitted courtrooms?
15        Seeing head shakes all around.
16        OK.  I encourage you to walk over and see how they're
17   outfitted.  There's a Plexiglas box that is built over the
18   witness stand which has a HEPA filter in it.  There's also a
19   Plexiglas box which is over the lawyer's podium, which also has
20   a HEPA filter in it.  You have to stay behind the podium if you
21   want to take your mask off, and we want you to take your mask
22   off because otherwise it's difficult to understand exactly what
23   you're saying.  But that means you have to say in the box.  So
24   you're welcome to put a mask on, approach the witness but then
25   get back into the box, where you can take your mask back off.

L8gWburC

1    You have to talk, whether you're seated at your table or you're

2    at the podium, you have to talk directly into your microphone

3    or you're not going to be heard.  Please try to remember that.

4    Trust me, I will remind you.

5          You need to stand when you're addressing me or the

6    witness and when the jury enters or exits.

7          Do not make speaking objections.  If I need, you can

8    give me a one word, "hearsay," "no foundation," whatever.  But

9    if I need argument, I'll bring you to the sidebar to hear it.

10         OK.  In terms of jury selection, the jury selection

11   takes place in the central jury room so that the jurors all

12   have enough space between their chairs.  They will be masked

13   throughout.  You have to be masked as well.  There's a table

14   for the government.  There's a table for the defense.

15         I use a struck system, so this means I need to qualify

16   28 jurors to get there.  I'll do the voir dire.  We'll deal

17   with strikes for cause as we go, but if somehow I've rushed

18   past you and you have a strike for cause, let me know before we

19   take peremptories, which you want to revisit whether there's a

20   legitimate strike for cause for one of the jurors.  For your

21   peremptories, we'll do it in rounds so you don't have to waste

22   any of your strikes.  The government goes first in the odd

23   rounds, so one and three.  The defense goes first in the even

24   rounds, two and four.  The government gets two strikes in

25   rounds one and two.  The defense gets three.  The government

L8gWburC

1    gets one strike in rounds three and four, and the defendant

2    gets two.  Don't feel like you have to memorize that.  Trust

3    me, I will tell you on each round who goes first and how many

4    strikes you have.

5            If a strike is waived, so we end up, after all the

6    strikes are taken, with 13 jurors, the highest numbered juror

7    becomes the first qualified alternate.  For alternates, I'm

8    only going to take two given how short the trial is.  That

9    means I need to qualify four jurors who each get one strike.

10   The remaining are your alternates.  If you waive a strike, I'll

11   keep the extra alternate.  OK?

12           MR. RUHNKE:  Question, your Honor.  Are counsel

13   directed to use strikes only against the 12 potential jurors in

14   the box or anywhere in the panel?

15           THE COURT:  No.  That's a box system.  On a struck

16   system, I am going to qualify 28 jurors.

17           MR. RUHNKE:  Yes.

18           THE COURT:  You can strike any one of them.

19           MR. RUHNKE:  OK.

20           THE COURT:  Whoever is left standing --

21           MR. RUHNKE:  12.

22           THE COURT:  -- that's the jury.

23           MR. RUHNKE:  Thank you, your Honor.  There are just

24   several different ways of doing that.  Yes.  Thank you.

25           THE COURT:  That's how I do it.

L8gWburC

1          OK.  I will allow the jury to take notes.  I will not

2     allow them to ask questions.

3          OK.  That brings us to voir dire.  Before I get going

4     on voir dire, do we have any -- are there going to be any

5     Spanish-speaking witnesses, witnesses who are testifying in

6     Spanish?

7          MR. ROTHSCHILD:  No, your Honor.

8          MR. RUHNKE:  Your Honor, there will be recordings

9     played, parts of which are in Spanish, so that question's going

10    to be appropriate.

11         THE COURT:  So there are some audio recordings where

12    there's Spanish in them?

13         MR. ROTHSCHILD:  That's correct, your Honor.

14         THE COURT:  OK.  Then I'm going to add a question to

15    the voir dire that deals with whether the person speaks

16    Spanish.  If they say yes, then my follow-up will be will you

17    comply with my direction to consider only the official

18    translation of the Spanish.  So I'll add that question.

19         All right.  Other than that, are there any other

20    questions, any objections to the proposed voir dire that I've

21    given you or any of your favorite questions that I did not

22    take?

23         MR. RUHNKE:  Your Honor, the latter.

24         THE COURT:  OK.

25         MR. RUHNKE:  Not a favorite question, but in this

L8gWburC

```
1    case, as your Honor may gather, police credibility is more

2    important than it is in, maybe, other cases since we have this

3    whole issue of an officer lying, our perspective, about an

4    important issue, and we have asked for specific questions on

5    our proposed voir dire.  We would ask you to ask our questions

6    8 and 9.  I'm sorry.  Not questions 8 and 9.  That's your

7    question.

8            Our questions are -- I'll come to it in that a second.

9    I need a second.

10           THE COURT:  Sure.  Take your time.  I've got all

11   afternoon.

12           MR. RUHNKE:  OK.  Thank you.

13           OK.  I'm sorry.  It is question 8 and 9 under our

14   case-specific questions.  Question 8 says:  "Many of the

15   witnesses you will hear are members of law enforcement.  Do you

16   believe that law enforcement witnesses are generally more or

17   less credible than nonlaw enforcement witnesses?"  And the next

18   question is really the more important of the two:  "Do any of

19   you believe that a law enforcement witness would never tell a

20   deliberate lie under oath, during a trial or elsewhere?"

21           That's an important question to us.  And that's all I

22   did have on the issue of voir dire, your Honor.

23           THE COURT:  Mr. Rothschild.

24           I'm not crazy about the wording of the question.  I

25   hear you in terms of this being a little unusual and that it's
```

L8gWburC

1     slightly different than the normal "let's bash the cops" type

2     of defense.

3          MR. ROTHSCHILD:  One moment, your Honor?

4          THE COURT:  Sure.

5          MR. ROTHSCHILD:  Your Honor, on the first question, I

6     think the spirit of the question seems fine.  Perhaps we can

7     work on wording, the parties can work out the wording.

8          On the second question, if I could that the Court

9     maybe just ask the defense to repeat that.  I'm not sure I

10    captured the entire second question.

11         THE COURT:  The question that Mr. Ruhnke wants

12    added -- again, I don't like the wording of his, but the

13    concept is his question No. 9, which is on page 3.  As he's

14    requested it, it reads:  "Does any potential juror believe that

15    a law enforcement witness would never tell a deliberate lie

16    under oath, during a trial or elsewhere?"

17         That can be wordsmithed, but the idea would be do you

18    believe that law enforcement officers never intentionally lie

19    in their testimony?

20         MR. RUHNKE:  As your Honor rephrases it, that would be

21    acceptable.  Thank you.

22         THE COURT:  It would probably make it even better.

23    Think about it.

24         MR. ROTHSCHILD:  That's fine, your Honor.

25         THE COURT:  OK.  We'll add something along those

L8gWburC

1   lines.

2           Anything else, Mr. Ruhnke?

3           MR. RUHNKE:  Nothing on jury selection, your Honor,

4   no.  Thank you.

5           THE COURT:  OK.

6           How about from the government?

7           MR. ROTHSCHILD:  No, your Honor.  Thank you.

8           THE COURT:  OK.  So with the addition of those two

9   questions, one about law enforcement's deliberately lying, and

10  second about Spanish-speaking, you have your voir dire

11  questions.

12          And the way I do this is I just pass out the

13  questionnaires at some point after I introduce myself and after

14  I introduce you.  I encourage them to keep notes.  I read all

15  the questions once to juror No. 1.  After that I'm only asking

16  for "yes" answers, and that makes it go pretty fast.

17          From a timing perspective, Covid makes things a little

18  bit different, and this is a narcotics case, which typically

19  takes a little bit longer to pick a jury.  But I can usually

20  get a jury by lunch.  So be prepared to start to open and have

21  your first witness on after lunch.  OK?

22          MR. RUHNKE:  Yes, your Honor.

23          THE COURT:  OK.  I also gave you the proposed, the

24  portion of my pre-charge, after the jury was selected, that

25  deals with the substantive law.  This is not intended to be a

L8gWburC

| | |
|---|---|
| 1 | complete jury charge, but it is intended to give them some |
| 2 | sense of what they're going to be asked to decide once they're |
| 3 | fully charged and have heard all the evidence. |
| 4 |      Any objections to the proposed preliminary charge? |
| 5 |      MR. ROTHSCHILD:  Not from the government. |
| 6 |      MR. RUHNKE:  Not from the defense, your Honor, no. |
| 7 |      THE COURT:  Terrific.  That's done. |
| 8 |      OK.  Government, I'm going to ask you to give the |
| 9 | defense the order of witnesses for the next day each day, so at |
| 10 | the end of the day, tell who are going to be your witnesses for |
| 11 | the following today. |
| 12 |      That brings us to the motions *in limine*. |
| 13 |      The first one deals with whether the government can |
| 14 | have its witnesses testify that there was an overdose.  Would |
| 15 | the government like to be heard? |
| 16 |      I've read all your papers.  Do you want to be heard |
| 17 | further? |
| 18 |      MR. ROTHSCHILD:  Just briefly, your Honor. |
| 19 |      We think that provides important context for how this |
| 20 | investigation got started and also for the behavior of the |
| 21 | defendant.  We think it's difficult to capture that without |
| 22 | using the word "overdose."  We think that the case comes in |
| 23 | more cleanly, more completely and in a more understandable way |
| 24 | for the jury if we're able to refer to that word. |
| 25 |      THE COURT:  Mr. Ruhnke. |

L8gWburC

1              MR. RUHNKE:  I believe that the evidence, your Honor,

2      respectfully, it's my position that the evidence that the

3      government wants to present can be presented with no mention of

4      a drug overdose.  I outlined a way to do that in my papers,

5      where the government can say there was an investigation, during

6      the investigation certain evidence was gathered, and this is

7      the evidence that was gathered during that investigation, and

8      leave it at that.

9              It's bad enough to be charged with narcotics.  To

10     suggest that somehow, and the government has said they're not

11     going to try to prove that Mr. Burgos is responsible for these

12     drugs, but to introduce the idea that people are overdosing on

13     drugs introduces the unfair element of prejudice to the case,

14     and I believe it can be presented as outlined in the papers

15     without any reference at all to an overdose.  I accept the

16     government's representation that they will not introduce the

17     fact that there were overdose deaths, but even without the idea

18     that people died, the idea of an overdose, to me, is unfairly

19     prejudicial, and we ask that your Honor not allow the

20     government to do that.

21             THE COURT:  OK.  My view on this is that, in the

22     abstract, the fact that there was an overdose would not lead

23     the jury to conclude that there was an overdose death, but the

24     fact of that witness's never testifying, I think, could lead a

25     reasonable juror to conclude that the overdose was actually a

L8gWburC

1    death, which makes this a very close call on 403.

2          I, like Mr. Ruhnke, though not necessarily adopting

3    his suggestion of how to do it, believe that with a reasonable

4    stipulation the parties, the government can get what the

5    government wants without actually having discussion of there

6    being an overdose.  Again, my thoughts, and you know the

7    evidence in this case, and I don't -- I mean I know a little

8    bit of it, but not really -- is that victim No. 1 was, it would

9    be a stipulation.  So it would just take all of this out of the

10   case beyond what your police officer's going to testify, that

11   victim No. 1 was a cocaine user from at least X date to Y date;

12   that the police acquired victim 1's telephone lawfully on a

13   particular date; that victim 1 lived at that address from at

14   least date one to date two; and that victim 1 is not available

15   to testify at trial.

16         Now, the government wants to get in somehow or another

17   that there was an investigation, the overdose providing a

18   jumping-off place for there being an investigation, but it

19   seems to me that you can wrap that in to this as well, as part

20   of the investigation of victim 1's drug use.  I don't know how

21   you would phrase it, but something along those lines.

22         MR. RUHNKE:  Your Honor, without using the term

23   "victim 1," it would be individual 1.

24         THE COURT:  It would probably be his name.

25         MR. RUHNKE:  Yes.

L8gWburC

1            THE COURT:  But I don't know his name, and so I'm

2    going with how you've briefed it.  So I'm going to ask you to

3    work on that.

4            Mr. Ruhnke, I'm going to hammer on you to being

5    reasonable, because this is not a slam dunk on the 403.  So if

6    you can't work out a reasonable stipulation and what I see you

7    is you being unreasonable, then I'm going to allow them to put

8    in what they want to put in.

9            MR. RUHNKE:  I don't think you have to worry about

10   that, your Honor.  We've been discussing a stipulation.

11           THE COURT:  I don't think so either, but just --

12           MR. RUHNKE:  I take your meaning.

13           THE COURT:  OK.

14           MR. RUHNKE:  Leave it at that.

15           THE COURT:  See what you can work out.  If you can't

16   work out what you need to work out by the end of the week, let

17   me know.

18           MR. RUHNKE:  Yes, your Honor.

19           THE COURT:  The second motion *in limine* is the issue

20   of coconspirator statements.  And my notes are too cryptic for

21   me to remember exactly what it was.

22           MR. ROTHSCHILD:  Your Honor, I'm not sure if there's

23   much disagreement between the parties on that issue.  I think

24   the defendant's response to that had been so long as the other

25   foundational elements are laid, we're OK there.  But I'll let

L8gWburC

1    the defense correct me if I'm wrong.

2              THE COURT:  Is that right, Mr. Ruhnke?

3              MR. RUHNKE:  That's right, your Honor.  The government

4    has to lay the foundation.  After they lay the foundation, it

5    comes in.  It's the application of *U.S. v. Bourjaily*, and

6    that's all it is.  Excuse me for saying this, but there's

7    nothing unique about it.  It's not a case of Bourjaily nouveau.

8              THE COURT:  Oh, Jesus.

9              MR. RUHNKE:  Excuse me.

10             THE COURT:  OK.  So that motion *in limine* is granted.

11   Assuming that the proffer bears out in terms of what the

12   evidence actually is, the statements are admissible as

13   coconspirator statements.

14             The possession of crack on the day of arrest is mooted

15   by the superseding indictment, so that motion is granted.

16             Then we get to the 2016 drug sales and arrest.

17             Mr. Rothschild, do you want to be heard on that?

18             MR. ROTHSCHILD:  Just very briefly, your Honor.

19             The government thinks that this is clearly admissible

20   404(b) evidence.  It's relatively close in time.  It's very

21   close in geographical location, very similar conduct and to the

22   extent that the defense in this case is going to be that the

23   drug paraphernalia found in the defendant's bedroom this time

24   around was not there for distribution purposes, the fact that

25   similar circumstances occurred just a few short years earlier,

L8gWburC

1   we think, is quite relevant.

2           THE COURT:  Before you start talking, Mr. Ruhnke, am I

3   correct that in 2016 a gun was recovered?

4           MR. ROTHSCHILD:  That's correct, your Honor.  In 2016,

5   a firearm was recovered as well as two air rifles and

6   ammunition.

7           THE COURT:  Hang on a second.

8           Have you been vaccinated, Mr. Burgos?

9           THE DEFENDANT:  No.

10          THE COURT:  Keep your mask over your nose.  Don't make

11  me have to tell you again.

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  I also encourage you to get vaccinated.

14          THE DEFENDANT:  OK.

15          THE COURT:  OK.  Regardless, you have to keep your

16  mask over your nose.

17          THE DEFENDANT:  Not a problem.

18          THE COURT:  OK.

19          So it was a real gun and BB guns.

20          MR. ROTHSCHILD:  It was a real gun and two air rifles,

21  that's correct, your Honor.

22          THE COURT:  OK.

23          MR. ROTHSCHILD:  As well as ammunition, ammunition for

24  the real firearm as well as other types of ammunition for other

25  types of firearms that were not recovered.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

L8gWburC

```
 1            THE COURT:  OK.

 2            All right.  Mr. Ruhnke.

 3            MR. RUHNKE:  Your Honor, I think we've made our

 4   position quite clear on this in our moving papers, in our

 5   responding papers, but this is going to be -- the danger is the

 6   jury will just take this as propensity evidence, that the

 7   government will introduce evidence that, Oh, he was dealing

 8   drugs three or four years ago, he must be doing it again.  Plus

 9   the idea that this would be a vehicle for introducing firearms

10   into this prosecution, a crime with which he is not charged,

11   and there would be no evidence that firearms were involved in

12   this case.

13            I add that this case was resolved, the 2016 case was

14   resolved by a plea to a seventh degree possession of narcotics.

15   That is not a felony-level offense.  That's an offense that

16   carries a maximum of one year in prison, and it's a minor drug

17   offense.

18            THE COURT:  There must have been some issue with the

19   search; no?

20            MR. RUHNKE:  I'm not sure what the --

21            THE COURT:  There was a ton of drugs found.

22            MR. RUHNKE:  I can tell you what the issue is, your

23   Honor.  This was not Mr. Burgos' apartment.  He rented a room

24   there.  He made statements at the time of his arrest then:  I

25   just rent a room here.  It's not my drugs.  I cut hair.  That's
```

L8gWburC

1    what I do.  I'm a barber.

2           And evidence throughout the discovery that there was a

3    little barber chair set up, barber equipment set up, and I'm

4    assuming that the district attorney looked at it and said

5    Burgos is not really a part of this; it's really the people who

6    own the apartment and, you know, he rented a room from.  So we

7    may hear some of that again in this trial if you allow it in.

8    But it's a case of minor involvement in a long past drug

9    offense that carries an overwhelming -- what is the limiting

10   instruction that the jury is supposed to apply to firearms?

11          THE COURT:  Well, assume the firearms don't come in.

12          MR. RUHNKE:  OK.

13          THE COURT:  For purposes of this argument.

14          MR. RUHNKE:  Then we're left with, well, what's the

15   limiting instruction concerning the fact that he was charged

16   with drugs a few years back?  And I have not seen the

17   government propose a limiting instruction, and I respectfully

18   don't know how a jury hearing that evidence wouldn't conclude:

19   Oh, he did it before; look, he's just doing it again.

20          THE COURT:  That's always a problem with 404(b).

21          MR. RUHNKE:  Yes, it's always a problem, but the

22   particular problem, when they are similar offenses to the

23   offense with which the defendant is tried -- this is not a case

24   of identity.  This is nothing that's a signature crime, you

25   know, about dealing drugs.

L8gWburC

| 1 | THE COURT:  Well, what's the defense on -- look, one |
| 2 | issue is what's the defense for the March possession? |
| 3 | MR. RUHNKE:  Correct, that the government will not be |
| 4 | able to prove this beyond a reasonable doubt.  That's our |
| 5 | defense, that the evidence is not reliable and sufficient |
| 6 | enough. |
| 7 | THE COURT:  Not that he may have possessed it, but he |
| 8 | wasn't intending to distribute it. |
| 9 | MR. RUHNKE:  Right.  There's none of that to it. |
| 10 | THE COURT:  You're not putting intent at issue. |
| 11 | MR. RUHNKE:  I'm sorry? |
| 12 | THE COURT:  You're not putting intent at issue. |
| 13 | MR. RUHNKE:  No.  No, we're not, your Honor.  We're |
| 14 | not saying, Oh, he possessed it but he was going to use it |
| 15 | himself, or anything like that.  No, nothing like that. |
| 16 | THE COURT:  Just this is -- |
| 17 | MR. RUHNKE:  They can't prove this case, your Honor. |
| 18 | That's our defense. |
| 19 | THE COURT:  The cop's lying. |
| 20 | MR. RUHNKE:  Yes. |
| 21 | MR. ROTHSCHILD:  Your Honor, if I may just briefly? |
| 22 | I think, first of all, your Honor made the point that |
| 23 | the concerns that Mr. Ruhnke's raising are present in all |
| 24 | 404(b) cases, and if that was the reason to keep things out, we |
| 25 | would never have 404(b) evidence come in. |

L8gWburC

1          The resolution of the 2016 case is not relevant.

2     What's relevant are the facts of the 2016 case.

3          THE COURT:  So tell me the facts more.  If the defense

4     was enough to push back the prosecutor, the D.A.'s office, that

5     he's just a tenant, he's just a roomer --

6          MR. ROTHSCHILD:  I'm not sure that that's what

7     happened here, your Honor.

8          So, there were, there was a confidential informant

9     working with the New York Police Department who did controlled

10    purchases from that unit, from that apartment unit, purchased

11    from the defendant, purchased from the defendant's brother.

12    That's what led up to the search warrant.  Police went in on

13    the day of the search warrant.  It's a two-bedroom apartment.

14    One of the bedrooms is outfitted as a barber shop.  There's a

15    barber chair, and there's nothing that makes it look like a

16    bedroom.

17         The other bedroom, by contrast, has a bed and

18    everything else that you'd expect to see in a bedroom.  It also

19    has Con Ed bills with this defendant's name, other paperwork

20    with this defendant's name.  It's his bedroom, and that's where

21    they find the bulk of the material they recovered: heroin,

22    crack, paraphernalia, baggies, some of the ammunition.  They

23    also find other evidence from the living room, from the

24    kitchen, from the hallway closet.  So this is the apartment

25    where the defendant was living, where he was selling drugs out

L8gWburC

1    of.

2            Now, we don't know exactly what happened with the

3    case.  We suspect that there was an issue with the CI and that

4    that's why the case was resolved in the way that it was, but

5    that's our understanding of the case.

6            The firearms, your Honor --

7            THE COURT:  Hang on.  Let's not move to the firearms

8    yet.

9            MR. ROTHSCHILD:  OK.

10            THE COURT:  How is the government introducing all of

11    this?  Are you telling the back -- you're not telling the back

12    story of informant purchases?

13            MR. ROTHSCHILD:  No.  No, your Honor.  We propose to

14    introduce just the evidence of the search of the apartment that

15    day.  We would call one of the officers who was present for

16    that search, who would testify to what he saw and what he

17    recovered from the scene that day.

18            THE COURT:  And describe the apartment.

19            MR. ROTHSCHILD:  Correct.

20            MR. RUHNKE:  That would lead to trial within a trial.

21            THE COURT:  Hang on a second.

22            And what would the government propose as a limiting

23    instruction?

24            MR. ROTHSCHILD:  It would be the standard limiting

25    instruction that's given for 404(b) evidence.  If this was

L8gWburC

```
1    being introduced -- I mean I'm a little confused by the idea
2    that intent is not being placed at issue here.  There were 19
3    bags of crack recovered from the defendant's pocket in his
4    arrest in this case.  If I understood defense counsel
5    correctly, they're not going to be arguing that that was
6    personal-use quantities; they're instead going to be arguing
7    that the police planted that and that never happened.
8            THE COURT:  That's what he's -- they're going to argue
9    the cops are lying.
10           MR. ROTHSCHILD:  OK.
11           THE COURT:  That's not what happened.
12           MR. ROTHSCHILD:  Correct.  I think absence of mistake,
13   absence of error is a basis for 404(b) in that case.
14           THE COURT:  But what's the mistake here?
15           MR. ROTHSCHILD:  Sorry.
16           Apologize, your Honor.  I think the appropriate
17   limiting instruction would be that this is not being introduced
18   for purposes of showing propensity or his character to commit
19   crime but, instead, to show knowledge and intent, which are
20   issues the government needs to prove.  And so when we show
21   evidence such as text messages of this defendant using certain
22   words, like "cars" and "soft" to explain to the jury that the
23   meaning behind those words was drugs and not something else in
24   this case.
25           THE COURT:  It's relevant and it comes in for the
```

L8gWburC

1    background of the conspiracy.

2         MR. ROTHSCHILD:  Yeah, that's right.

3         THE COURT:  And what about the gun; what possible

4    relevance does the gun have?

5         MR. ROTHSCHILD:  Your Honor, I think there's numerous

6    cases that refer to guns as tools of the drug trade.

7         THE COURT:  Totally agree.  OK.  Now, get me through

8    the 403 balancing.  Why isn't it more prejudicial than

9    probative given the fact that this case, the charges in this

10   case do not involve guns and don't involve drug dealing with

11   guns.

12        MR. ROTHSCHILD:  Your Honor, I'm not aware of a case

13   that says that gun evidence can only come in if guns are

14   present in the charged case.  I think there's a range of

15   equipment that drug dealers use, and some of it was present in

16   the 2020 arrest and overlapping parts of that were to present

17   in the 2016 arrest too, but in the 2016 arrest he had

18   additional equipment, and it happened to be firearms.

19        THE COURT:  OK.

20        Mr. Ruhnke.

21        MR. RUHNKE:  Your Honor, this is a case of the tail

22   wagging the dog.  We're going to have a trial within a trial.

23        THE COURT:  I don't think so.

24        MR. RUHNKE:  Oh, good.

25        THE COURT:  Why do you think that?

L8gWburC

1          MR. RUHNKE:  Well, because then the issue is going to

2     be was he living there, was he in possession of these items

3     that were recovered.

4          THE COURT:  OK.

5          MR. RUHNKE:  And you know, we may have to call

6     witnesses on those issues.

7          THE COURT:  OK.

8          MR. RUHNKE:  There were some references in the *Jencks*

9     material to that, and I think that the question of the guns is

10    particularly clear as a 403 basis, where the jury's being told

11    you've heard evidence of firearms dealing -- firearms recovery,

12    Mr. Burgos is not charged with dealing in firearms, but you may

13    consider this evidence on -- what?  On background?

14         That just doesn't, you know -- background is just too

15    big a bucket for 404(b) evidence, and you know, the government

16    has evidence of present narcotic paraphernalia that it claims

17    it can credibly prove was in the apartment at the time of his

18    arrest, and they have that evidence.  And I think it's just

19    unfair, and I don't think this trial will be a fair trial if he

20    had to defend now against a 2016 charge, and bluntly, your

21    Honor, if the district attorney who prosecuted this case had

22    any thought that Mr. Burgos had anything to do with these

23    firearms, a seventh degree drug possession charge with a

24    maximum exposure of up to one year would not have been an offer

25    in the case.

L8gWburC

1          THE COURT:  Look, I can't speculate about what was

2    going on in the D.A.'s head.

3          MR. RUHNKE:  I know, your Honor.

4          THE COURT:  Let's hold on this now and go on to the

5    other issue, because they kind of go together in terms of my

6    understanding of what the evidence is going to look like as

7    presented to the jury.

8          So the fifth motion *in limine* is the issue of the

9    undercovers testifying by pseudonym.  There was no objection to

10   that, so that's granted.

11         That brings us to the statements that the victim --

12   it's our dead victim, right?  The guy died -- that the victim

13   made to his sister about dealing drugs with John.  And how did

14   these statements, from a timing perspective, how do they sync

15   up with the 2016 seizures?

16         MR. ROTHSCHILD:  Your Honor, the first set of

17   statements are from five years ago, so around 2016.  I don't

18   think we know whether they're made before or after the seizure.

19         THE COURT:  Around the same.

20         MR. ROTHSCHILD:  But around the time, around that

21   time.  That's exactly right.

22         The second set of statements come shortly before the

23   victim's death, so early 2019.

24         THE COURT:  OK.  Do you want to be heard on these?

25         MR. ROTHSCHILD:  Your Honor, I'll rest on our papers

L8gWburC

1    on that one.

2              THE COURT:  OK.

3              Mr. Ruhnke.

4              MR. RUHNKE:  Your Honor, for any number of reasons

5    that we've tried to put before your Honor, we don't think this

6    is appropriate that we have the sister of the declarant coming

7    before the jury and saying to the jury, My brother told me that

8    he deals drugs with John.  And that statement can't be

9    cross-examined, and there's a Sixth Amendment objection to it.

10             THE COURT:  Again, that's always the problem with

11   dying declarations -- I'm sorry, statements against interest.

12             MR. RUHNKE:  Absent witnesses.

13             THE COURT:  Absent witnesses, correct.

14             MR. RUHNKE:  But here's a case where the -- and the

15   argument is that somehow this is a declaration against penal

16   interests on the part of the brother.

17             THE COURT:  Right.

18             MR. RUHNKE:  -- a private family complaint to the

19   sister that their mother is stealing drugs and he doesn't know

20   how he's going to pay John for the drugs and the second series

21   of statements about dealing with John, the sister has no idea

22   if these statements are true or false.  The witness can't be

23   cross-examined on the statements, obviously, because he's

24   absent and the very nature of them, to implicate a defendant on

25   trial by name by a witness who can't be cross-examined on a

L8gWburC

1   theory that somehow it's a declaration against interests or,

2   even more attenuated, a coconspirator's statement, that these

3   statements somehow furthered an ongoing conspiracy involving

4   the deceased brother and the defendant on trial.

5          And in terms of reliability, the time that's passed

6   before she told anyone about these statements is another

7   factor, I think, that weighs in there.  I think it's a period

8   of five years for one group of statements and two years for the

9   next set of statements or conversations.  Under just the

10  totality, I think it would be unfair.  And I want to be clear.

11  It also would be a Sixth Amendment violation to allow this

12  evidence.

13          THE COURT:  OK.

14          Mr. Rothschild, anything?

15          MR. ROTHSCHILD:  And your Honor, just to clarify, I

16  think it was clear in what Mr. Ruhnke just said, but our read

17  is that the victim was, in fact, a coconspirator; these

18  statements are not testimonial.

19          THE COURT:  The victim was a coconspirator.

20          MR. ROTHSCHILD:  I'm sorry?

21          THE COURT:  Hang on a second.

22          Mr. Burgos, don't make me tell you again.  You have to

23  keep it above your nose.  You breathe through your nose and

24  your mouth.  If you've got virus, it comes out your nose.

25          MR. ROTHSCHILD:  Your Honor, the statements are not

L8gWburC

1    made to law enforcement, is the point.  These are not

2    testimonial statements that were made to law enforcement.

3    These are statements that are made to the sister.

4               THE COURT:  Your allegation is the second piece, the

5    ones where he was trying to get money, he's asking his sister

6    for money to pay off the guy he bought drugs from.

7               MR. ROTHSCHILD:  Correct.

8               THE COURT:  Because his mother stole the drugs.

9               MR. ROTHSCHILD:  That's exactly right.

10              THE COURT:  Assuming that he is a coconspirator, why

11   don't you think those are within the scope of the conspiracy,

12   Mr. Ruhnke?  He's looking for money to repay his dealer.  That

13   furthers the conspiracy --

14              MR. RUHNKE:  Because --

15              THE COURT:  -- piece within the conspiracy.

16              MR. RUHNKE:  Because it names Mr. Burgos.

17              THE COURT:  That doesn't change whether it's a

18   coconspirator statement.

19              MR. RUHNKE:  I don't think this furthers a conspiracy,

20   and I think there's an overall reliability issue.

21              THE COURT:  Why isn't that appropriate for

22   cross-examination?

23              MR. RUHNKE:  It would be appropriate for

24   cross-examination if it came to that, but I think it's also

25   appropriate for a 403 analysis.  I think the argument that this

L8gWburC

1    is somehow furthering a conspiracy that Mr. Burgos is involved

2    with the decedent at the time is attenuated, and I maintain our

3    objection.

4              THE COURT:  OK.  I disagree.  I mean I certainly agree

5    that if it were marginally relevant, that the 403 balance might

6    fall differently, but I disagree that it's marginal relevance.

7    This is an issue of whether, in fact, Mr. Burgos was part of a

8    conspiracy to deal drugs.  A lot of the evidence sort of ebbs

9    and flows through text messages between the dead guy and either

10   John-no-last-name or someone talking about John.  So all of

11   that, linking all of that together is going to be critical for

12   the government to be able to prove its case.  So I disagree

13   that it's not coconspirator statement.  I think it is

14   coconspirator statement, and it's not so attenuated that it

15   should be excluded under a 403 analysis.

16             So I'm going to allow the statements in, and that

17   brings us back to the 2016 drug sales.  Because of the overlap

18   in time but for pulling it back and the conversation five years

19   ago, it would be a closer case on the 2016 search, but it seems

20   to me that that does complete the picture of what was going on

21   with Mr. Burgos.  And therefore, I'm going to admit it, but I

22   am not going to admit the gun.  The guns and the ammunition are

23   out.  I think on a 403 analysis, it's too prejudicial given its

24   probative value, which, given the fact that you've got lots of

25   drugs in the apartment, is almost none.  So the guns and ammo

L8gWburC

1    are out.  The drugs and other drug paraphernalia are in.

2            OK.

3            MR. ROTHSCHILD:  Your Honor, I apologize for

4    interrupting.

5            Just to clarify, are you admitting both sets of

6    statements as we have defined them in the motion?

7            THE COURT:  Yes.

8            MR. ROTHSCHILD:  OK.

9            THE COURT:  Yes.

10           MR. ROTHSCHILD:  Thank you, your Honor.

11           THE COURT:  That's it for the *in limine* motions.

12           Mr. Ruhnke filed a motion on Sunday for sanctions.

13           Has that been worked out between the parties that

14   there's now an understanding of what happened?

15           MR. RUHNKE:  It has been worked out between the

16   parties, apparently a misunderstanding.  And just that the way

17   it was written in the *Jencks* material is a red flag to defense

18   attorneys.

19           THE COURT:  Understood.

20           MR. RUHNKE:  And I will say also, your Honor, I came

21   across another example of an even more direct reference in 3500

22   materials "do not discuss this with anyone," and the government

23   explained to me, Well, that's just their way of saying don't

24   talk to other witnesses about it; it's a way of saying we

25   didn't say what we said.  So it's been worked out, is the

L8gWburC

1    answer.

2              THE COURT:  Good.  OK.  All right.  So the motion for

3    sanctions is denied as moot.

4              MR. RUHNKE:  It's withdrawn, your Honor.

5              THE COURT:  It's withdrawn.  Fine.

6              I think we signed off on Mr. Ruhnke's request to be

7    able to bring laptops in.  The government can bring your

8    laptops in.  Just remember to bring a copy of the order with

9    you to facilitate you getting through the guards.

10              MR. RUHNKE:  Yes, your Honor.  Thank you.

11              THE COURT:  Was there a plea offer made in this case?

12              MR. ROTHSCHILD:  Your Honor, I don't believe a written

13    plea offer was ever extended, but I believe that plea

14    discussions were had with defense counsel and the -- we

15    verbally conveyed what the plea would be, which in this case

16    would be that it's a plea to the (b)(1)(C).  That offer was

17    made verbally by prior government counsel.

18              THE COURT:  All right.

19              MR. RUHNKE:  In fact, there was a written plea offer

20    advanced by prior government counsel and discussed with the

21    client.  And we're prepared to go to trial, your Honor.  That's

22    the answer to that.

23              THE COURT:  OK.

24              Mr. Burgos, did your lawyer tell you that the

25    government had made a plea offer to you?

L8gWburC

1          THE DEFENDANT:  Yes.

2          THE COURT:  And did you discuss it with your lawyer?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Was it your decision to go to trial?

5          THE DEFENDANT:  Yes.

6          THE COURT:  OK.

7          All right.  I think we've gotten the 3500 list and

8    exhibit list from the government.  Is that correct?

9          MR. ROTHSCHILD:  That's correct, your Honor.

10          THE COURT:  Perfect.

11          MR. ROTHSCHILD:  The 3500 material's been provided to

12    the Court and an index will be sent separately.

13          THE COURT:  All right.  Anything further?

14          I'm done with my agenda.  Does the government have any

15    questions?

16          MR. ROTHSCHILD:  One moment, your Honor?

17          THE COURT:  Sure.

18          MR. ROTHSCHILD:  Nothing further from the government,

19    your Honor.  Thank you.

20          THE COURT:  Anything from the defense?

21          MR. RUHNKE:  No, just to advise your Honor that the

22    parties have been working cooperatively on drafting

23    stipulations.

24          THE COURT:  Good.

25          MR. RUHNKE:  And hopefully that will go smoothly.

L8gWburC

1          THE COURT:  Are there definitely going to be some

2     stipulations?

3          MR. ROTHSCHILD:  Yes, there will be, your Honor.

4          THE COURT:  OK.  Are there going to be summary charts?

5          MR. ROTHSCHILD:  There will be, your Honor, yes.

6          THE COURT:  Both that are coming into evidence and

7     those that are just used as an aid to the jury, or one or the

8     other or both?

9          MR. ROTHSCHILD:  I believe both, your Honor, certainly

10    that are coming in as evidence.  What was submitted today to

11    the Court as Government Exhibit 400 is an example of a chart

12    that is in evidence.

13         THE COURT:  OK.

14         I'm trying to think of some more issues for the final

15    charge.

16         Is anything redacted?

17         MR. ROTHSCHILD:  In the exhibits?

18         THE COURT:  Yes.

19         MR. ROTHSCHILD:  I don't believe so, your Honor, no.

20         THE COURT:  OK.

21         Anything else?

22         MR. ROTHSCHILD:  Your Honor, just to clarify, some of

23    the 3500 material in the case has been redacted so to the

24    extent the defense seeks to introduce that as an exhibit,

25    there's redactions on some of that material, but nothing that

L8gWburC

1    the government intends to put forth in its exhibit list.

2              THE COURT:  OK.  That's unlikely to come into

3    evidence, but you never know, I guess.

4              All right.  Anything further?

5              Assume that we're going to do a charge conference on

6    Tuesday night of the trial.  We'll get you the charge, we'll

7    get you the draft charge maybe by the end of this week based on

8    my assumptions of what the trial's going to look like.  We'll

9    put brackets if there are things that I just don't know whether

10   it's going to become an issue or not.  OK?

11             MR. RUHNKE:  Yes, your Honor.

12             MR. KROUSE:  If acceptable to the Court, I'll be

13   handling the charge conference.  That will probably be my only

14   speaking role at trial.

15             THE COURT:  OK.  So, you're the second seat.

16             You guys are going to be the main.  How long is your

17   opening going to be, do you know?  Who's opening?

18             MR. ROTHSCHILD:  I am, your Honor.  Not long.  I can't

19   imagine it would be more than ten minutes.

20             THE COURT:  OK.

21             Mr. Ruhnke, about the same for you?

22             MR. RUHNKE:  About the same, your Honor, maybe a

23   little longer.  Ten minutes is an awfully short time.

24             THE COURT:  OK.  You should definitely have a witness

25   available, one or two even, for Monday because we presumably

L8gWburC

1    will get there.

2            OK.  Thanks, everybody.  See you Monday.  Please be in

3    the courtroom by 9:45, no later.

4            MR. RUHNKE:  Thank you, your Honor.

5            (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25